UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| **TERMINAL PROPERTIES, LLC** | ) | CASE NO. 1:19CV1238 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| **54 CHEVY, LLC,** | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter is before the Court on Defendant's Motion to Compel Arbitration and Stay or Dismiss Plaintiff's Complaint. (ECF #5). For the following reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **ORDERS** Plaintiff to arbitrate its claims against Defendant and **STAYS** Plaintiff's Complaint until such arbitration is complete.

On July 8, 2014, Plaintiff, Terminal Properties, LLC, ("Terminal"), and Defendant, 54 Chevy, LLC, ("54 Chevy"), entered into an Access and Utility Easement Agreement ("Access Agreement"). This agreement was to ensure that 54 Chevy had a reasonable means of ingress and egress to the property 54 Chevy maintained after partitioning the part of its lot with access to Chevrolet Boulevard to Terminal on February 27, 2014. (ECF #1 at PageID 1-3).

Part of the Access Agreement included the terms for constructing a driveway entirely within the Access Easement Area. (ECF #1-1 at PageID 12-14). Section 3.4 of the Access Agreement requires Terminal to provide a list of the contractors engaged by Terminal and the plans for the Driveway Installation Work to 54 Chevy before commencing the Driveway Installation Work. (ECF #1-1 at PageID 12-13). Section 3.5 of the Access Agreement states that the Driveway Installation Work shall not be commenced until 54 Chevy "has received and approved the Plans and the contract or contracts for the Driveway Installation Work, including the scope of work and pricing contained therein." (ECF #1-1 at PageID 13). Section 5 of the Access Agreement provided that 54 Chevy would be responsible for payment of the Driveway Installation Work. (ECF #1-1 at PageID 15).

On July 23, 2015, Terminal's counsel sent preliminary drawings to 54 Chevy's counsel. (ECF #1-3 at PageID 41). Later that day, 54 Chevy's counsel responded by agreeing to the plans but specifically objecting to the pricing of Terminal's proposed contract, stating "it's our position that we are obligated only for $150,000 of the 'Driveway' cost." (ECF #1-3 at PageID 42). Some time later, despite 54 Chevy's objection to the pricing and without its approval, Terminal proceeded with a contract with Independence Excavating ("Independence") for the Driveway Installation Work at a cost of $690,000. (ECF #1 at PageID 3).

Terminal and 54 Chevy also included an arbitration provision in the Access Agreement at Section 8.4. (ECF #1-1 PageID 18). The arbitration provision reads:

> 8.4 In the event of a dispute among the Parties as to the necessity of repairs or maintenance or the reasonable costs thereof or as to any matter arising with respect to the Easement Areas, then the same shall be submitted to arbitration under the rules and regulations of the American Arbitration Association. … The decision of the arbitrator(s) shall be final and binding upon the Parties … [and] shall be enforced in any court of competent jurisdiction. … To the fullest extent permitted by law, the Parties

> irrevocably submit to the jurisdiction of such forum and waive any
> objections as to either of the jurisdiction of the forum. … The
> arbitrator(s) will have full power and authority to resolve any
> question of law, whether applying it to the admission of evidence
> or otherwise, in the same manner as could a judge of the Common
> Pleas Court of Cuyahoga County, Ohio.

*Id.*

On May 30, 2019, Terminal filed a Complaint against 54 Chevy in the U.S. District Court for the Northern District of Ohio, Eastern Division for Breach of Contract and Unjust Enrichment. (ECF #1). Terminal demanded a jury trial and sought payment for the Driveway Installation Work completed by Independence. (ECF #1 at PageID 7).

On July 31, 2019, 54 Chevy filed the instant Motion to Dismiss and Compel Arbitration. (ECF #5). In its Motion, 54 Chevy alleges that it and Terminal are bound to arbitrate their issues by the arbitration provision covering "any matter related to the Access Easement Area" that both parties agree is included in a valid and binding agreement. (ECF #5; ECF #7). In addition to compelling arbitration, 54 Chevy moves to dismiss Terminal's Complaint under Fed. R. Civ. P. 12(b)(6).

On August 14, 2019, Terminal filed its Opposition to 54 Chevy's Motion to Dismiss and Compel Arbitration. (ECF #7). In its response, Terminal alleges that the arbitration provision in the Access Agreement should be interpreted as narrow in scope and therefore only covers matters arising out of maintenance or repairs to the Access Easement Area. (ECF #7). As such, Terminal argues, 54 Chevy's non-payment for paving services is outside of the arbitration provision and Terminal's Complaint should stand in Federal Court. (ECF #7).

On August 23, 2019, 54 Chevy filed its Reply in Support of its Motion to Dismiss and Compel Arbitration in response to Terminal's Opposition. (ECF #9). In its Reply, 54 Chevy notes that Terminal did not cite Sixth Circuit precedent in its Opposition and provides the

appropriate Sixth Circuit precedent regarding the interpretation of the arbitration clause. (ECF #9 at PageID 100-102).

## **LAW AND ANALYSIS**

The Court compels arbitration of Terminal's claims against 54 Chevy pursuant to the Federal Arbitration Act ("FAA") and relevant precedent. Section 2 of the FAA provides that written provisions to settle controversies by arbitration shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA establishes a federal policy favoring arbitration that requires courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987).

Section 3 provides that a court shall, on application of one of the parties, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," provided that the court is "satisfied that the issue involved in [the] suit … is referable to arbitration under [the] agreement." 9 U.S.C. § 3. A dispute is "arbitrable" if there is a "valid agreement to arbitrate" and the "specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). A court "must engage in a limited review to determine whether dispute is arbitrable." *Id*. According to the Supreme Court, "the Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [including when] the problem at hand is the construction of the contract language itself." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Section 4 of the FAA provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" may petition any federal district court,

which would otherwise have jurisdiction over the underlying matter, "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

   i. <u>Compelling Arbitration</u>

Defendant 54 Chevy argues that the arbitration provision is valid and that Terminal's claims are within its scope. (ECF #5 at PageID 63). Terminal does not dispute that the arbitration provision is valid, but disputes that its claims are within the scope of the arbitration provision. (ECF #7 at PageID 78). In deciding whether to order arbitration, the Court considers four issues: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if federal claims are asserted, whether Congress intended arbitration to govern the claims; and (4) whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714.

Regarding issue (1), the parties do not dispute that they agreed to arbitrate in their valid and binding Access Agreement. Further, there are no federal claims asserted by Terminal in its Complaint so issue (3) is not considered. (ECF #1). The analysis that remains for the Court is to determine whether claims for non-payment for the paving of the Access Easement Area fall within the scope of the arbitration provision of the Access Agreement (issue (2)), and if so, whether the Court should stay or dismiss the proceedings (issue (4)).

   a. *Scope of the Arbitration Provision* (issue (2))

The Federal Arbitration Act establishes a liberal policy favoring arbitration agreements and "any doubts regarding arbitrability should be resolved in favor of arbitration over litigation." *Uszak v. AT&T Inc.*, 2015 WL 13037500 at *3 (N.D. Ohio Oct. 6, 2015). Thus, any ambiguities in the contract language or doubts as to the parties' intentions should be resolved in favor of arbitration. *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25.

The arbitration provision in the valid and binding Access Agreement between Terminal and 54 Chevy provides that, "In the event of a dispute among the Parties as to the necessity of repairs or maintenance or the reasonable costs thereof or as to any matter arising with respect to the Easement Areas, then the same shall be submitted to arbitration." (ECF #1-1 at PageID 18, § 8.4).

Terminal contends that the mention of "repairs or maintenance or the reasonable costs thereof" limits the rest of the arbitration provision to any matter arising out of repairs or maintenance and cites a number of Second Circuit cases supporting its reading of the arbitration provision as narrow in scope. (ECF #7 at PageID 78-79). Defendant 54 Chevy argues that the phrase "any matter arising with respect to the Easement Areas" means the arbitration provision is broad and that any matter arising in relation to the Easement Areas shall be submitted to arbitration. (ECF #9 at PageID 100-101).

The Sixth Circuit has held that arbitration provisions with language including "any claim," "any matter," or "arising out of" are broad in scope. *See Cincinnati Gas and Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983) (finding an arbitration provision covering "all controversies arising under the agreement" to be broad in scope); *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 515 F.3d 646, 649-50 (6th Cir. 2008) (finding an arbitration clause was broad when it covered "any dispute or claim arising from or in connection with this agreement or the services provided….").

Here, the arbitration provision covers "dispute[s] among the Parties *as to* the necessity of repairs or maintenance or the reasonable costs thereof **or** *as to* any matter arising with respect to the Easement Areas." (ECF #1-1 at PageID 18) (emphasis added). Read as such, the arbitration provision covers: (1) disputes about the necessity of repairs or maintenance or the reasonable

costs thereof, or (2) disputes as to any matter arising with respect to the Easement Areas. The inclusion of the phrase "any matter arising with respect to the Easement Areas" supports 54 Chevy's reading of the arbitration provision as broad in scope. *See Cincinnati Gas*, 706 F.2d at 160; *Watson Wyatt & Co.*, 515 F.3d at 649-650. The Court reads this provision broadly.

Terminal alternatively argues that the language of the arbitration provision is ambiguous and should be construed against 54 Chevy as the drafter of the agreement. (ECF #7 at PageID 81). Terminal cites the principle that ambiguous contract language should be construed "against the interest of the party that drafted [the contract]." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). With respect to arbitration clauses specifically, Terminal cites the Sixth Circuit holding that "in case of ambiguity and uncertainty about arbitration clauses' meaning, they should be construed against the [drafters]." *Drazdik v. Kidder, Peabody & Co., Inc.*, 1987 WL 37866 at *2 (6th Cir. 1987).

Since there is narrow and broad language according to Terminal, the arbitration clause is ambiguous and should be construed against the interest of 54 Chevy, who Terminal asserts is the drafter of the agreement. (ECF #7 at PageID 81). Interpreting the clause against 54 Chevy would be construing it as narrow in scope, which would exclude the dispute at hand from arbitration.

Nothing in the Access Agreement or the Complaint identifies 54 Chevy as the drafter of the Access Agreement. (ECF #9 at PageID 102). In its response, 54 Chevy cites a recent Sixth Circuit holding that "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Reo v. Palmer Admin. Serv.*, 770 F. App'x. 746, 747 (6th Cir. 2019) (citing *Stout*, 228 F.3d at 714). In following well-established Sixth Circuit and Supreme Court precedent, the Court reads the arbitration provision in the Access Agreement

between Terminal and 54 Chevy as broad in scope, thus including the claims for Breach of Contract for payment for the paving of the Access Easement Area and Unjust Enrichment by use of the Access Easement Area. As such, the Court compels arbitration of the dispute.

      b. *Whether to Stay or Dismiss Proceedings* (issue (4))

Section 3 of the FAA mandates that a court stay the proceedings of a claim provided that the court is "satisfied that the issue involved in [the] suit … is referable to arbitration under [the] agreement." 9 U.S.C. § 3. As demonstrated above, Terminal's claims are within the scope of the arbitration provision in the valid and enforceable Access Agreement between Terminal and 54 Chevy. Following the command from Congress in § 3, the Court stays Terminal's claims until arbitration is complete.

## **CONCLUSION**

For the foregoing reasons, the Court finds the arbitration provision in the valid and binding Access Agreement between Terminal and 54 Chevy broad in scope. Because of its breadth, it encompasses both Terminal's Breach of Contract and Unjust Enrichment claims since both relate to "any matter arising with respect to the Easement Areas." (ECF #1-1 at PageID 18). Accordingly, the Court **STAYS** proceedings in accordance with the Federal Arbitration Act and **ORDERS** the parties to proceed to arbitration. The case is removed from the active docket.

    **IT IS SO ORDERED.**


**DATED: October 29, 2019**

                                                         **s/Christopher A. Boyko**
                                                         CHRISTOPHER A. BOYKO
                                                         United States District Judge